867 F.2d 446
 UNITED STATES of America, Appellee,
v.
Norbert E. STELTEN, Appellant.
UNITED STATES of America, Appellee,
v.
Audrey J. HAWLEY, Appellant.
UNITED STATES of America, Appellee,
v.
Lloyd M. EMOND, Appellant.
UNITED STATES of America, Appellee,
v.
Robert A. HAWLEY, Appellant.
UNITED STATES of America, Appellee,
v.
Donald Lee CARLSON, Appellant.
UNITED STATES of America, Appellee,
v.
Joseph P. GORMAN, Appellant.
 Nos. 87-5491 to 87-5495 and 87-5517.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1988.
Decided Feb. 1, 1989.
Rehearing Denied in No. 87-5493 March 17, 1989.
Rehearing Denied in No. 87-5491 March 24, 1989.
Rehearing and Rehearing En Banc Denied April 21, 1989.
 
 William Cohan, Denver, Colo., for R. Hawley.
 Bruce A. Hanley, Minneapolis, Minn., for Gorman.
 William Orth, St. Paul, Minn., for A. Hawley.
 Mark W. Peterson, Minneapolis, Minn., for Emond.
 Donald Lewis, Asst. U.S. Atty., Minneapolis, Minn., for U.S.
 Before HEANEY, Circuit Judge, EDWARDS,* Senior Circuit Judge, and MAGILL, Circuit Judge.
 
 
 1
 GEORGE CLIFTON EDWARDS, Jr. Senior Circuit Judge.
 
 
 2
 Norbert E. Stelten, Joseph P. Gorman, Robert A. Hawley, Audrey J. Hawley, Lloyd M. Emond, and Donald Lee Carlson appeal the decision of the district court to deny their motions to suppress allegedly illegally seized evidence.[1] We affirm.
 
 BACKGROUND
 
 3
 Appellants were charged with and convicted of a single count of conspiracy to defraud the United States Government by impairing and impeding the lawful functions of the Internal Revenue Service, in violation of 18 U.S.C. Sec. 371.[2] Appellant Carlson was charged with and convicted of income tax evasion for the tax year 1983, in violation of 26 U.S.C. Sec. 7201. In addition to imposing prison sentences which range from two to five years, the district court assessed the prosecution costs of $17,254.53 to be paid "jointly and severally" by the appellants.
 
 
 4
 The appellants are members of the National Commodity and Barter Association (NCBA), an association seeking political redress from the United States Government against what it perceives to be an unconstitutional and oppressive monetary and taxation system. The leadership of the NCBA advocates and promotes opposition to federal income taxation laws. The subject of this lawsuit is the appellants' participation in a NCBA warehousing banking exchange commonly known as the National Commodity Exchange (NCE). The official purpose of the NCE was to provide an alternate method of banking for NCBA members to preserve privacy in financial transactions.
 
 
 5
 The government contends that the true purpose of the warehouse bank exchanges was to allow the appellants to defraud the United States of tax monies owed by conducting financial transactions without creating records which could be detected by the IRS. The appellants also allegedly promoted the use of the exchanges to other individuals as a method of preventing the IRS from tracing income to its source or owner. According to the IRS, the appellants failed to file income tax returns and suggested to exchange members that the filing of income tax returns was not required.
 
 
 6
 The NCE, managed and operated by Joseph P. Gorman, had several affiliated satellite exchanges. Robert and Audrey Hawley operated the Mid-States Exchange (MSE) from their home in Alexandria, South Dakota. Stelten, a salesman of business trusts, maintained a satellite exchange account with MSE, serviced transactions for several individuals through this account, and provided the Hawleys with a list of his account holders. Emond held an NCBA account, and operated a satellite exchange called the Nu-Patriot Commodity Exchange. Carlson maintained two accounts with the NCE and one account with MSE.
 
 
 7
 After an undercover investigation, IRS agents obtained and executed three search warrants in Colorado, seizing numerous boxes of documents relating to the NCE warehousing business.[3] Several NCBA members then requested a Fed.R.Crim.P. 41(e) evidentiary hearing seeking the return of these documents. A federal district judge held that the search was illegal as the description of the items to be seized was insufficiently particular. The district court ordered the IRS to return the property to NCBA members.[4] Although the documents were returned, the IRS retained copies of many of the documents and submitted them to a Minnesota grand jury. After being indicted in Minnesota for conspiring to defraud the United States Government, the appellants filed motions to suppress the copies as evidence, arguing that the Colorado proceeding precluded the government from using these documents in the Minnesota trial. The district court denied these motions and many of the documents were admitted at trial.
 
 
 8
 IRS agents also obtained a warrant to search the South Dakota residence of Robert Hawley and Audrey Hawley.[5] Although the warrant only extended to the business office in the Hawley residence, IRS agents conducted a security search of the entire house. They discovered and seized a large number of MSE records, banking documents, cassette tapes, and books in the office, a basement closet and several bedrooms. The Hawleys sought the return of the documents through a Rule 41(e) motion, but the district court refused to rule on the constitutional validity of the warrant as their motion was premature.[6] After they were indicted for conspiring to defraud the United States Government, the Hawleys renewed their motion to suppress, asserting that the description of items to be seized, identical to the description in the Colorado warrants, was insufficiently particular and overbroad. The district court denied their motion. 661 F.Supp. at 1095. Several items seized from the Hawley home were admitted into evidence at trial.
 
 
 9
 In this consolidated appeal, the appellants assert that the district court erred in not suppressing the evidence seized during the execution of the Colorado and South Dakota search warrants because the warrants were overly broad and they violated the appellants' first amendment rights by calling for the seizure of documents indicating names of NCBA members. Appellants also assert that both the Colorado and South Dakota warrants were not properly admissible under the good faith exception to the exclusionary rule. We disagree.
 
 DISCUSSION
 
 10
 The Tenth Circuit found that the Colorado warrants were invalid because they allowed the seizure of evidence not related to the specific crime of conspiracy to defraud the government. The district court recognized the binding nature of this finding in the present case. It stated:
 
 
 11
 The district court [of Colorado] ruled the warrants were supported by sufficient probable cause, but invalid on particularity grounds. The Tenth Circuit Court of Appeals affirmed. 774 F.2d at 406.
 
 
 12
 Thus, on the instant motion to suppress the evidence seized pursuant to the three Colorado warrants, we do not proceed on a clean slate. The Colorado courts have decided that the affidavits supplied probable cause for the searches and that the warrants were not drawn with sufficient particularity to pass muster under the fourth Amendment.
 
 
 13
 United States v. Stelten, supra note 1, at 1094.
 
 
 14
 Although we may disagree with the Tenth Circuit, we are bound by its decision. The district court correctly noted, however, that neither the Colorado district court nor the Tenth Circuit addressed the issue of whether the officers acted in objectively reasonable reliance on the warrants that were issued by a detached and neutral magistrate. Thus, the evidence seized pursuant to the Colorado warrant may be admissible under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The district court properly addressed this issue.
 
 
 15
 The appellants, however, also raise an overbreadth challenge against the South Dakota warrant. Our review of Eighth Circuit law, in contrast to Tenth Circuit case law, indicates the South Dakota search warrant in this case is not facially overbroad because it called for the seizure of property being used in violation of federal law and because the seizure was limited to property involved in the alleged crime.
 
 
 16
 The last sentence of the South Dakota warrant provides that only evidence of the appellants' conspiracy to defraud the government should be seized. A very detailed affidavit accompanied the warrant clearly establishing the government's contention that the appellants were attempting to hide tax monies owed to the federal government through the banking warehouse operations. The warrant did not authorize the seizure of every business document or every item located in the Hawley residence. The warrant and the affidavit indicated to the searching agents that they had to limit their seizure of evidence to documents relating to the appellants' attempt to defraud the government through banking warehouse transactions. We do not believe that the warrant, accompanied with the affidavit, was constitutionally deficient.
 
 
 17
 Nor do we find in the present case any violation of the "scrupulous exactitude" standard of Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). In Stanford v. Texas, the Supreme Court held that warrants calling for the seizure of books on the basis of the objections to ideas they contain must describe the items to be seized with "scrupulous exactitude." 379 U.S. at 485, 85 S.Ct. at 511-12. When the government wishes to seize written material for any reason other than the content of the material, the first amendment is not infringed and the scrupulous exactitude test does not apply.
 
 
 18
 The IRS listed items in the Colorado and South Dakota warrants that were business records documenting the financial transactions of the banking warehouses. Although some of the seized documents identified the names of people who participated in the activities of the NCBA, NCE and MSE, that fact does not render their seizure a violation of the members' right of association. Seizure of a customer's warehouse receipt file is proof of the way in which he or she used the NCE's financial services to conceal income. This type of business record in no way resembles "indicia of membership," as its evidentiary value is independent of the association it demonstrates. Furthermore, the books that were seized were not confiscated on the basis of the ideas they contained. The Bible that was seized, for example, contained a bookmark that had banking information written on it. Thus, neither the Colorado warrants nor the South Dakota warrant violate the appellants' first amendment rights. They are, therefore, not subject to the Stanford v. Texas standard.
 
 
 19
 Even if the evidence had been seized pursuant to overly broad warrants, courts need not exclude evidence seized by law enforcement officers acting in objectively reasonable reliance on a warrant issued by a neutral magistrate. United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984).
 
 
 20
 We agree with the district court that the evidence supports the officers' reasonable presumption that the Colorado and South Dakota warrants were valid. The agents' testimony establishes that they took much care in drafting the descriptions of items to be seized. In the Colorado case, they sought the consultation of an Assistant U.S. Attorney. A comprehensive affidavit describing the scheme to defraud the government accompanied all of the warrants. Given the effort in drafting the warrants, the detailed affidavits and the specific itemization of evidence sought, we cannot find that the warrants were "so facially deficient * * * that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923, 104 S.Ct. at 3421. We affirm the district court's holding that the warrants at issue pass muster under the good faith exception enunciated in Leon.
 
 CONCLUSION
 
 21
 The judgments of conviction are affirmed.
 
 
 22
 HEANEY, Circuit Judge, dissenting.
 
 
 23
 I disagree with the majority that the warrants were sufficiently drawn to pass the particularity requirement of the fourth amendment. I also believe the majority errs in extending the Leon good faith doctrine to warrants lacking sufficient specificity or particularity, or to searches which include areas other than those specified in the warrant. For these reasons, I respectfully dissent.
 
 
 24
 The majority is of the opinion that the South Dakota warrant does not fail for overbreadth. Yet, the Tenth Circuit in Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985), held that the Colorado warrants, almost identical to the South Dakota warrant, were invalid for their failure to particularize the items to be seized. The Tenth Circuit stated:
 
 
 25
 The bulk of the warrant was not restricted to evidence relating to tax fraud, however. It authorized government agents to rummage through all of the NCBA's customer files, bank records, employee records, precious metal records, marketing and promotional literature, and more, seeking any information pertaining to any federal crime. Even to describe the warrant as limited to evidence relating to federal crimes is an interpretation generous to the government. The concluding sentence in the warrant refers to the general conspiracy statute, but is not couched in terms that clearly restrict seizure to evidence relevant to the violation of the statute. The sentence simply reads: "All of which are evidence of violations of Title 18, United States Code, Section 371." Even if the reference to section 371 is construed as a limitation, it does not constitute a constitutionally adequate particularization of the items to be seized.
 
 
 26
 Id., 774 F.2d at 404-05.
 
 
 27
 The majority's cursory analysis of the overbreadth issue clearly misses the mark. The constitutional standard for particularity in a search warrant requires that the language be sufficiently definite to enable the searcher to ascertain and identify the thing authorized to be seized. United States v. Strand, 761 F.2d 449, 453 (8th Cir.1985). It is not enough that a warrant "calls for the seizure of any property being used in violation of federal law," as suggested by the majority. The description of the property to be seized must be so specific that it leaves nothing to the discretion of the agents executing the warrant. Marvin v. United States, 732 F.2d 669, 674 (8th Cir.1984). Furthermore, the warrant must not allow the officers to seize more than is reasonable under the circumstances. Id.
 
 
 28
 As the Tenth Circuit clearly pointed out, the insufficient particularity of the Colorado warrants is illustrated by some of the items seized: copies of the Internal Revenue Code, the Federal Rules of Criminal Procedure, and The Federalist Papers. Voss, 774 F.2d at 405. The record indicates that the South Dakota warrant led to the seizure of a personal phone book, newspaper articles about tax protestors, a Bible, a folder containing information on contract law, and survivalist literature. None of these items showed that the Hawleys had failed to file tax returns or that they had conspired with the other banking warehouse operators to hide taxable income. The sweeping nature of the searches indicates that the executing agents were interested in any item or document that might illustrate the appellants' political views on federal income taxation or their affiliation with tax protestors. There is nothing significantly different between the Colorado warrants and the South Dakota warrant. Because all of the warrants failed to limit the discretion of the searching officers, I believe they are all constitutionally deficient.
 
 
 29
 I also disagree with the application of the Leon good faith exception to the exclusionary rule in this case. In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that evidence seized by police officers acting in good faith pursuant to a facially valid warrant would be admissible even though the warrant was subsequently found to lack probable cause. The Court cautioned, however, that "[i]n so limiting the suppression remedy, we leave untouched the probable-cause standard and the various requirements for a valid warrant." Id., 468 U.S. at 923, 104 S.Ct. at 3421. It expressly refused to apply the good-faith exception to warrants which fail to adequately specify the place to be searched or the items to be seized. Id. Furthermore, the Court noted that its holding was based on an assumption "that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant." Id., 468 U.S. at 918 n. 19, 104 S.Ct. at 3418 n. 19. This language indicates that application of the Leon exception to the exclusionary rule should not apply to facially overbroad warrants or to searches which exceed the scope of the warrant. See also United States v. Strand, supra, 761 F.2d at 456 (Leon does not apply to cases in which officers seize items not authorized by warrant); United States v. Fuccillo, 808 F.2d 173, 177-78 (1st Cir.), cert. denied, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987) (Leon good faith exception does not apply when agents exceed the authority of a broadly-drawn warrant); United States v. Spilotro, 800 F.2d 959, 968 (9th Cir.1986) (the Leon exception to exclusionary rule is inapplicable to conduct of searching officers who act pursuant to an overly broad warrant); United States v. Crozier, 777 F.2d 1376, 1381 (9th Cir.1985) (agent cannot reasonably rely on overbroad warrant which fails to describe particular items to be seized).
 
 
 30
 Because I believe the warrants were facially deficient and the officers seized items not reasonably related to the crime of tax fraud, I do not believe that this evidence is admissible under the good faith exception to United States v. Leon. The majority fails to persuade me to the contrary.
 
 
 
 *
 The Honorable George C. Edwards, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Two pretrial orders of the district court are reported at 661 F.Supp. 1087 (D.Minn.1987) and 661 F.Supp. 1092 (D.Minn.1987). In addition to the constitutional validity of several search warrants, the appellants also challenge the district court's refusal to admit an attorney of Gorman's choice to represent him, to sever the appellants' cases, to strike the jury panel as unconstitutional, to exclude certain testimony as hearsay, to give requested instructions on multiple conspiracy, to impose a lighter sentence on Gorman, and to relieve Audrey Hawley and Emond of responsibility for the costs of prosecution. After a careful review of the record, we agree with the district court's well-reasoned opinion as to these issues and affirm on that basis. Appellants also challenge the sufficiency of the evidence supporting their convictions. We believe there was sufficient evidence to support the jury verdicts. We focus only on the search and seizure issues in this case
 
 
 [2]
 18 U.S.C. Sec. 371 provides:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
 
 
 [3]
 The warrants authorized the search of the NCBA offices in Denver, Gorman's residence in Littleton, Colorado, and Gorman's automobile. The Colorado warrant authorized the seizure of:
 
 
 [1]
 Any and all books, records, or documents relating to customer accounts * * *
 
 
 [2]
 Any and all banking records pertaining to financial transactions of NCBA/NCE conducted as an entity at banking institutions * * *
 
 
 [3]
 Any and all books, records, or documents reflecting the financial services conducted by NCBA/NCE and financial status of NCBA/NCE and its affiliates, * * *
 * * *
 
 
 [5]
 Any and all books, records, or documents relating to employees of NCBA/NCE or its affiliates including contracts, job descriptions, payroll ledgers, attendance records, and employee benefits
 
 
 [6]
 Any and all books, records, or documents evidencing purchasing, sale, or storage of precious metals (including gold and silver) * * *
 
 
 [7]
 Currency, cashier's checks, and precious metals (including gold and silver)
 
 
 [8]
 Any and all books, records, or documents relating to the marketing or promotion of NCBA/NCE, * * *
 
 
 [9]
 Books, pamphlets, correspondence, video and audio tapes, and documents advocating nonpayment of federal income taxes or illegitimate means to evade payment of federal income taxes
 
 
 [10]
 Documents, certificates, seals, bylaws, books, or other publications of tax protestor organizations, including Sheriff's Posse Comitatus and Basic Bible Church
 
 
 [11]
 Any and all records, books, and documents relating to communications between persons conspiring to defraud the Internal Revenue Service, or preparations by such conspirators to conceal or prevent the full detection by law enforcement authorities of such a fraud, including correspondence, telephone toll records, agreements, wire transfers, telexes, research, memoranda, and notes
 All of which are evidence of violations of Title 18, United States Code, Section 371.
 
 
 [4]
 The court's order was affirmed on appeal in Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985)
 
 
 [5]
 The South Dakota warrant authorized the search of: "The Mid-States Exchange (MSE) one-room business office located within the two story, blue frame, single family residence of Robert and Audrey Hawley * * * and all containers and concealed areas therein."
 The documents to be seized included:
 
 
 [1]
 Any and all books, records, or documents relating to customer accounts, including identity of customer (names, address, telephone number) and customer's account number identification; contracts, statements of account, warehouse receipts * * *
 
 
 [2]
 Any and all banking records pertaining to financial transactions of MSE/NCE and NCBA conducted as an entity at banking institutions * * *
 
 
 [3]
 Any and all books, records, or documents reflecting the financial services conducted by MSE/NCE and NCBA and financial status of MSE/NCE and NCBA and its affiliates * * *
 
 
 [4]
 Any and all books, records, or documents relating to employees of MSE/NCE or its affiliates including contracts, job descriptions, payroll ledgers, attendance records, and employee benefits
 
 
 [5]
 Any and all books, records, or documents evidencing purchasing, sale, or storage of precious metals (including gold and silver) * * *
 
 
 [6]
 Currency, cashier's checks, and precious metals (including gold and silver)
 
 
 [7]
 Any and all books, records, or documents relating to the marketing or promotion of MSE/NCE and NCBA * * *
 
 
 [8]
 Books, pamphlets, correspondence, video and audio tapes, and documents advocating nonpayment of federal income taxes or illegitimate means to evade payment of federal income taxes
 
 
 [9]
 Documents, certificates, seals, bylaws, books, or other publications of tax protestor organizations, including Sheriff's Posse Comitatus, Basic Bible Church and First Freedom Church
 
 
 [10]
 Any and all records, books, and documents relating to communications between persons conspiring to defraud the Internal Revenue Service, or preparations by such conspirators to conceal or prevent the full detection by law enforcement authorities of such a fraud, including correspondence, telephone toll records, agreements, wire transfers, telexes, research, memoranda and notes
 All of which are evidence of violations of Title 18, United State Code, Section 371.
 
 
 [6]
 United States v. Mid-States Exchange, 620 F.Supp. 358 (D.S.D.1985), appeal dismissed by 815 F.2d 1227 (8th Cir.1987) (appeal dismissed for lack of jurisdiction over interlocutory order). The Hawleys were subsequently convicted of violating the currency transaction report requirements of the Bank Secrecy Act of 1970, 31 U.S.C. Secs. 5313 and 5322(a). On appeal from this conviction, the Hawleys argued that the evidence seized from their home should have been excluded because the warrant was overbroad. The Court found that the admission of the seized evidence, if error, was harmless because other evidence existed in the record to support their conviction. The panel did not reach the overbreadth issue. United States v. Hawley, 855 F.2d 595 (8th Cir.1988)