Submitted February 27, affirmed May 14, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHERYL LYNN JENNINGS,
*Defendant-Appellant.*

Benton County Circuit Court
CM0320659; A128414

184 P3d 1200

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Tammy W. Sun, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jonathan H. Fussner, Attorney-In-Charge, Criminal Appeals Unit, filed the brief for respondent.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals her conviction, after a stipulated facts trial, for delivery of a Schedule II controlled substance. *Former* ORS 475.992 (2001), *renumbered as* ORS 475.840 (2005). In her sole assignment of error, defendant asserts that the trial court erred in denying her motion to suppress evidence that police found while executing a telephonically authorized warrant. Defendant contends that the issuing judge's oral authorization and the terms of the duplicate original warrant that the requesting police officer prepared and executed are in material conflict such that the warrant violated the particularity requirement of Article I, section 9, of the Oregon Constitution. We affirm.

In June 2003, Corvallis police executed a search warrant at defendant's residence. Officer Goodwin had sought that warrant by telephone based on information provided by a named informant to the effect that the informant had seen methamphetamine and cash in a bank bag at the residence. ORS 133.545(5). Based on Goodwin's oral statement, a judge orally authorized a warrant

> "to be issued for the search of that premises for those drugs and other items including packaging and distribution materials, drug records, stolen property, firearms and other weapons, computers, cellular telephones, planners, police radio scanners and people inside the residence * * * [and] other items inside the residence easily linked to criminal activity."

The duplicate original written warrant that Goodwin created stated that any officer in Benton County was authorized as follows:

> **"TO SEARCH FOR AND SEIZE**:
>
> "Illegally possessed controlled substances, packaging or distribution materials, drug records, stolen property, firearms or other weapons, computers, cellular telephones, planners, police radio scanners, persons inside the residence, and any other items easily linked to criminal activity."

In executing the warrant, police found and seized a bank bag containing methamphetamine and other evidence of criminal

activity. Defendant was arrested, charged, and, based on stipulated facts derived from that evidence, was convicted of delivery of a Schedule II controlled substance.

■      As noted, on appeal, defendant asserts that the trial court erred in denying her motion to suppress the evidence that police seized from her residence. Defendant does not assert that the information sworn to by the officer failed to establish probable cause to search for and seize the items listed in the warrant, nor does defendant argue that the duplicate original warrant was invalid on its face. Instead, defendant argues that, because the issuing judge's preceding oral directive authorized only a search for, not seizure of, the items at defendant's residence, the ensuing warrant's authorization to seize that evidence violated the particularity requirements of Article I, section 9, thereby rendering the warrant void *ab initio*. In support of that proposition, defendant relies on this court's decisions in *State v. Miller*, 188 Or App 514, 72 P3d 643, *rev den*, 336 Or 146 (2003), and *State v. Martin/Dills*, 170 Or App 366, 12 P3d 548 (2000).

■      The principles that govern our review of search warrants are well settled:

> "ORS 133.545 and ORS 133.555 govern the issuance of search warrants. ORS 133.545 provides that an application for a search warrant 'shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched.' ORS 133.545(4). A judge reviewing the application and supporting affidavit shall issue a search warrant if 'there is probable cause to believe that the search will discover things specified in the application * * *.' ORS 133.555(2). In addition to the statutory requirements just described, Article I, section 9, of the Oregon Constitution provides that 'no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.'"

*State v. Henderson*, 341 Or 219, 224, 142 P3d 58 (2006). ORS 133.545(5) allows a recorded oral statement to substitute for a written affidavit when a police officer applies for a search warrant over the telephone:

"Instead of the written affidavit * * *, the judge may take an oral statement under oath. The oral statement shall be recorded and transcribed. The transcribed statement shall be considered to be an affidavit for the purposes of this section. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the judge receiving it and shall be retained as a part of the record of proceedings for the issuance of the warrant."

ORS 133.555(3) sets out the procedures for issuance of a telephonic warrant:

"The judge may orally authorize a police officer or a district attorney to sign the judge's name on a duplicate original warrant. A duplicate original warrant shall be a search warrant for the purposes of [this chapter] * * *. In such cases a judge shall enter on the face of the original warrant the exact time of the issuance of the warrant and shall sign and file the original warrant in the manner provided by law."

By introducing the warrant at the hearing on defendant's motion to suppress, the state made a *prima facie* case that the search was lawful; the burden then shifted to defendant to prove that the warrant was invalid. *State v. Johnson*, 335 Or 511, 520, 73 P3d 282 (2003) ("[W]hen state agents have acted under authority of a warrant, the burden is on the party seeking suppression (*i.e.*, the defendant) to prove the unlawfulness of a search or seizure."). Search warrants are to be read in a common-sense, realistic, and nontechnical manner. *State v. Villagran*, 294 Or 404, 408, 415, 657 P2d 1223 (1983). "[W]e give deference to the issuing magistrate and resolve doubtful or marginal cases in the light of the preference for warrants." *State v. Poulson*, 150 Or App 164, 170, 945 P2d 1084 (1997). When viewed in light of those principles, the telephonic affidavit and the issuing judge's authorization of a "search warrant" were sufficient to authorize the preparation and execution of the search-and-seize warrant in this case.

The only evidence of the issuing judge's intent admitted at the suppression hearing was the transcript of his recorded telephone conversation with Goodwin. In his oral statement, Goodwin averred that he had "probable cause to believe that a search of certain property, as more fully

described below, will yield evidence relating to the crimes of" delivery and possession of a controlled substance. In response, the judge stated:

"I'll make a finding that there's probable cause to believe that evidence relating to possession and distribution or delivery of controlled, illegally controlled substances, may be found in [defendant's residence] and authorize a search warrant to be issued for the search of that premises for those drugs and other items * * *."

Although neither the judge nor the officer used the words "seize" or "seizure," it is readily apparent from the context of the discussion that they were speaking in shorthand terms that necessarily implied a request for and, ultimately, authorization to seize the items for which the court authorized the police to search. No other interpretation comports with common sense.[1] Accordingly, the warrant did not materially deviate from the issuing judge's oral authorization. *See State v. Jordan*, 73 Or App 84, 88-89, 697 P2d 1004, *rev den*, 299 Or 251 (1985) (although judge failed to expressly authorize officer to sign judge's name to duplicate original warrant, judge's statement that "I'll allow you to have a search warrant" implicitly authorized officer to sign warrant). The cases on which defendant relies are not to the contrary.

In *Martin/Dills*, there were multiple deviations between the issuing judge's oral recital authorizing a telephonic warrant and the terms of the duplicate original warrant that the officer prepared. As pertinent to defendant's argument here,

"the duplicate original warrant's description of the premises violated an implicit, but essential, statutory requirement. That description not only was facially overbroad, but it also deviated materially from the issuing magistrate's underlying authorization. It broadened the authorized scope of the search from one apartment to include the entire complex. If the statutory scheme is to operate practically

---

[1] In some circumstances, a "search only" warrant can be useful, for example, where police want to visit a crime scene to observe its layout or verify the location of property that they have no lawful right to seize. Likewise, a "seize only" warrant might be useful in circumstances where there is valid consent to search. However, none of those circumstances exists here.

and legally, officers, in creating a *duplicate* original warrant, must accurately memorialize the material elements of the court's order. That did not occur here."

170 Or App at 372 (citations omitted; emphasis in original). The state nonetheless argued that the deviation was immaterial because the overbreadth could be cured by reference to the court's oral authorization. We disagreed:

"Ultimately, the state's 'oral warrant' argument founders on the incontrovertible fact that the officers here did not execute *that* warrant. Instead, they presented and executed the duplicate original warrant—a warrant that deviated materially from the magistrate's authorization and that 'describe[d] [the] premises in such a way that it [made] possible the invasion of [an] interest in privacy without the foundation of probable cause for the search.' That process violated Article I, section 9. Consequently, the court correctly allowed the motion to suppress."

*Id.* at 375-76 (citation omitted; emphasis in original).

Here, by contrast, the duplicate original warrant was facially valid, and the state relies on *its* validity, not on the validity of the preceding oral recital by the judge who considered and granted the telephonic warrant request. Moreover, as discussed, defendant's effort to undermine the validity of the duplicate original warrant fails because the judge's statement to the officer, when viewed in a common-sense, nontechnical way, evinced an intention to authorize the preparation and execution of a search-and-seize warrant.

*Miller* also is distinguishable. There, we considered "whether a search warrant must explicitly authorize a seizure of items to be searched for or whether the authorization to seize is implicit in the authorization to search." 188 Or App at 517. We concluded that the reference in the warrant to returning a list of items seized did not constitute authorization to seize the items and declined to imply authorization to seize the items from the authorization to search or from any other language in the warrant. *Id.* at 517-18. Because searches and seizures are separate acts, we explained that they must be analyzed separately; authorization to seize, therefore, is not inherent in an authorization to search because "the objects searched for may not be evidence of a

criminal act subject to seizure." *Id.* Thus, in *Miller*, we held that, under ORS 133.565(2), an executed warrant that did not authorize a seizure could not provide the authority for a seizure. *Id.* at 518.

That is not the circumstance here. The duplicate original warrant in this case expressly authorized seizure of the evidence of a crime for which defendant was convicted. The issue is whether the terms of the warrant were consistent with the judge's preceding oral authorization. Read in context, they were. *Miller*, therefore, does not dictate the outcome in this case.

Affirmed.